ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| HARD CONTRACTORS, INC.; EDMUNDO GOVEO COLLAZO<br><br>Parte Recurrida<br><br><br>v.<br><br><br>**CROWLEY CARIBBEAN LOGISTICS LLC**; UNIÓN DE TRONQUISTAS DE PUERTO RICO (LOCAL 901); **CROWLEY PUERTO RICO SERVICES, INC.**; JOHN DOE Y JANE ROE A, B, Y C CUYOS NOMBRES SE DESCONOCEN<br><br>Parte Peticionaria | KLCE202500077 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2024CV05409<br><br>Sala:808<br><br>Sobre: Daños y Perjuicios (Art. 9 (d) Ley Contra el Crimen Organizado) |

Panel integrado por su presidente, el Juez Figueroa Cabán, el Juez Salgado Schwarz y el Juez Monge Gómez.

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 6 de febrero de 2025.

Compareció ante este Tribunal la parte peticionaria, Crowley Caribbean Logistics, LLC (en adelante, "Crowley Caribbean Logistics") y Crowley Puerto Rico Services, Inc. (en adelante, "Crowley Puerto Rico") (en adelante y en conjunto, "las Peticionarias" o "Crowley"), mediante recurso de *certiorari* presentado el 27 de enero de 2025. Nos solicitaron la revocación de la *Resolución* emitida y notificada por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, "TPI"), el 3 de diciembre de 2024. Dicho dictamen fue objeto de una "**Moción de Reconsideración**" interpuesta por las Peticionarias, la cual fue declarada "No Ha Lugar" el 24 de diciembre de 2024.

Por los fundamentos que expondremos a continuación, *expedimos* el auto de *certiorari* ante nuestra consideración y *revocamos* la *Resolución* recurrida.

**I.**

Los hechos que originan la controversia que tenemos ante nuestra consideración surgen tras la presentación de una "**Demanda**", al amparo de la Ley Contra el Crimen Organizado y Lavado de Dinero, *infra*, por parte de Hard Contractors, Inc. (en adelante, "Hard Contractors") y el Sr. Edmundo Goveo Collazo (en adelante, el "señor Goveo Collazo") (en adelante y en conjunto, "los Recurridos") en contra de las Peticionarias, la Unión de Tronquistas de Puerto Rico (en adelante, "Unión de Tronquistas") y otros codemandados desconocidos. Mediante la misma, alegaron que las Peticionarias crearon junto con la Unión de Tronquistas una empresa criminal, la cual estuvo operando desde el año 2016 hasta el año 2022. Destacaron que dichas compañías comerciales se dedican al transporte, logística, almacenamiento y acarreo de bienes. Sostuvieron que éstas realizaron actividades ilegales a través de las cuales indujeron a los Recurridos a ceder propiedades y bienes bajo el temor de perder sus medios de sustento. Resaltaron que las referidas actuaciones de extorsión están sujetas a acusaciones criminales bajo las leyes de Puerto Rico y de Estados Unidos.

Asimismo, manifestaron que las Peticionarias y la Unión de Tronquistas actuaron en conjunto y común acuerdo para crear un esquema de actividad de crimen organizado, el cual consistía en designar ciertas personas como líderes del Sindicato de la Unión de Tronquistas, quienes posteriormente pasarían a ser parte de la gerencia de Crowley Caribbean Logistics y de Crowley Puerto Rico. Argumentaron que éstos participaron en un patrón de crimen organizado consistente en extorsionarlos mediante la exigencia de dinero obtenido del acarreo de mercancía y cobrándoles ilegalmente parte del mismo, bajo la amenaza de que cesarían la relación contractual entre las empresas si no cumplían mensualmente con los pagos.

Expresaron que el Sr. José Ayala Rosado (en adelante, el "señor Ayala Rosado") ocupó varios puestos en la Unión de Tronquistas desde delegado general hasta presidente del Sindicato y que, en el año 2011, se convirtió en el gerente general de Crowley Caribbean Logistics. Acentuaron que el 26 de junio de 2019 el señor Ayala Rosado renunció y creó su propia empresa

llamada "Integrity Global Transport", por lo que nombraron al Sr. Alexis Rodríguez Normandía como gerente general de Crowley Caribbean Logistics.

Narraron que el 10 de diciembre de 2016 hubo una reunión en el Restaurante Metropol ubicado en el Municipio de Dorado, en la que el señor Rodríguez Normandía y el señor Ayala Rosado le exigieron a Hard Contractors que les pagara a ambos el diez (10%) de cada proyecto de mantenimiento en el terminal, bajo el entendimiento que solo así podrían asignarle tareas. Expresaron que luego del paso del Huracán María, el Federal Emergency Management Administration (en adelante, "FEMA") inició los operativos de emergencia correspondientes y aumentó la tarifa de acarreo. Alegaron que, como consecuencia de lo anterior, Crowley Caribbean, Crowley Puerto Rico y la Unión de Tronquistas modificaron su patrón de extorsión para exigirle a Hard Contractors más dinero, específicamente $8,000.00 semanales o $32,000.00 mensuales.

De igual manera, esbozaron que en el año 2019 Hard Contractors cooperó y proveyó información en concepto de *wistleblower* en una investigación que se llevó a cabo en la ciudad de Jacksonville, en el estado de la Florida, en contra de Crowley por alegadamente cometer un patrón de actividades de crimen organizado. Agregaron que dichas comunicaciones fueron sostenidas con gerenciales de Crowley y sus correspondientes representaciones legales, de las cuales obtuvieron documentos de pagos ilegales y tenían pleno conocimiento de las actividades ilícitas llevadas a cabo por Crowley Logistics. Expresaron que, previo a la referida investigación, el señor Ayala Rosado le había informado a Crowley Carribbean que estaba dispuesto a irse de la compañía si lo ayudaban monetariamente a levantar su nueva empresa. No obstante, arguyeron que, debido a las mencionadas denuncias de actividades ilegales, Crowley Caribbean decidió prescindir de los servicios del señor Ayala Rosado y no le pagó el dinero que alegadamente le había prometido.

Por último, los Recurridos alegaron que, como parte de una movida coordinada entre las empresas, el 21 de septiembre de 2022 la Unión de Tronquistas le solicitó a Crowley Caribbean Logistics que eliminara a Hard Contractos del grupo de transportistas afiliados a la Unión. Afirmaron que

dicha actuación evidencia que las Peticionarias incurrieron de manera intencional en al menos dos (2) actos de crimen organizado en el transcurso de diez (10) años. En vista de lo anterior, le solicitaron al Tribunal que declare "Con Lugar" la "**Demanda**" e imponga un pago no menor de seis (6) millones de dólares por los daños sufridos. Así las cosas, el 17 de septiembre de 2024, la Unión de Tronquistas presentó su "**Contestación a Demanda**" en la que negó la mayoría de las alegaciones expuestas en su contra e invocó las siguientes defensas afirmativas: (1) prescripción, (2) falta de parte indispensable, (3) falta de jurisdicción, (4) cosa juzgada y (5) la ausencia de una causa de acción. De conformidad con ello, le peticionó al TPI que declare "No Ha Lugar" la "**Demanda**" incoada en su contra.

Ese mismo día, Crowley Carribbean Logistics y Crowley Puerto Rico presentaron una "**Moción de Desestimación de Demanda de Codemandados Crowley Caribbean Logistics, LLC y Crowley Puerto Rico Services, INC**." (en adelante, "Moción de Desestimación"), mediante la cual aseveraron que la causa de acción instada al amparo de la Ley contra el Crimen Organizado, *infra*, es improcedente por las siguientes razones: (1) Hard Contractors no alegó haber sufrido un daño claro, real y palpable como consecuencia del presunto patrón de actividades de crimen organizado, por lo que carecía de legitimación activa para instar dicha acción; (2) la causa de acción está prescrita, puesto que las alegadas actuaciones ocurrieron antes del año 2020; y (3) la "**Demanda**" incumple con el estándar estatutario requerido por la mencionada ley, ya que los Recurridos no alegaron de manera contundente que las Peticionarias participaron en alguna actividad ilícita. En sintonía con ello, le solicitaron al TPI que declare "No Ha Lugar" la "**Demanda**" e imponga el pago de costas, gastos y honorarios de abogados.

En esa misma fecha, la Unión de Tronquistas también presentó una "**Moción Uniéndonos a Moción de Desestimación presentada por los codemandados Crowley**" en la que manifestó que todos los argumentos expuestos por las Peticionarias en la *Moción de Desestimación* le son aplicables, por lo que se adhirieron a los fundamentos expresados en dicha solicitud. En reacción a lo anterior, el 3 de octubre de 2024, los Recurridos presentaron una "**Moción en Oposición a Moción de Desestimación**" a

través de la cual recalcaron su postura y afirmaron que los pagos presuntamente exigidos constituyeron actos de extorsión y lavado de dinero, ambos tipificados como delitos bajo las legislaciones estatales y federales. Asimismo, argumentaron que en el presente caso aplica el término prescriptivo de diez (10) años dispuesto en el Artículo 4 de la Ley Contra el Crimen Organizado y Lavado de Dinero, *infra*, y no el de un año (1) establecido en el Código Civil de Puerto Rico para las acciones de daños y perjuicios. Además, señalaron que las alegaciones especificadas en la "**Demanda**" cumplen plenamente con el estándar exigido por nuestras Reglas de Procedimiento Civil.

Finalmente, el 3 de diciembre de 2024, el TPI emitió una *Resolución* mediante la cual declaró "No Ha Lugar" la *Moción de Desestimación* interpuesta por Crowley Caribbean Logistics y Crowley Puerto Rico, bajo el fundamento de que la causa de acción no se encuentra prescrita, toda vez que el término prescriptivo aplicable al caso de autos es de cuatro (4) años y el último presunto patrón de actividad de crimen organizado ocurrió el 21 de septiembre de 2022.

Posteriormente, el 10 de diciembre de 2024, las Peticionarias presentaron una "**Moción Solicitando Que Se Tome Conocimiento Judicial**" en la que le solicitaron al Tribunal que tomara conocimiento judicial de la Ley Núm. 109 de 28 de junio de 1962, según enmendada, mejor conocida como la "Ley de Servicio Público de Puerto Rico", debido a que esta establece que ninguna empresa puede dedicarse a prestar servicios de transportación de carga de vehículos sin la correspondiente autorización de la Comisión de Servicio Público de Puerto Rico, requisito que afirmaron Hard Contractors no ha cumplido. Insatisfechas con el dictamen del foro primario, el 18 de diciembre de 2024, las Peticionarias presentaron una "**Moción de Reconsideración**", la cual fue declarada "No Ha Lugar" el 24 de diciembre de 2024.

Inconforme con dicha determinación, las Peticionarias presentaron el recurso que nos ocupa y le imputaron al foro primario la comisión de los siguientes errores:

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DETEMINAR QUE LA CAUSA DE ACCIÓN NO ESTÁ PRESCRITA, A PESAR DE QUE EL ÚLTIMO ALEGADO ACTO CRIMINAL OCURRIÓ HACE MÁS DE CUATRO AÑOS ANTES DE QUE SE INSTARA LA DEMANDA.

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE LOS RECURRIDOS ALEGARON HECHOS SUFICIENTES Y PLAUSIBLES PARA DEMOSTRAR QUE LAS PETICIONARIAS VIOLARON LA LEY DEL EMPLEADO NO FUERON AUTORIZADOS, ESTABAN DEL ÁMBITO DE SU EMPLEO Y NO BENEFICIARON LOS INTERESES DE LAS PETICIONARIAS.

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE LOS RECURRIDOS ALEGARON HECHOS SUFICIENTES Y PLAUSIBLES PARA DEMOSTRAR QUE LAS PETICIONARIAS VIOLARON LA LEY CONTRA EL CRIMEN ORGANIZADO CUANDO LOS RECURRIDOS NO ALEGARON HECHOS ESPECÍFICOS QUE DEMOSTRARAN QUE LAS PETICIONARIAS PARTICIPARON DE UNA ACTIVIDAD DE CRIMEN ORGANIZADO.

El 4 de febrero de 2025, compareció la parte recurrida mediante "**Alegato en Oposición a que se Expida un Auto de *Certiorari***".

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**

La Regla 10.2 de Procedimiento Civil y su jurisprudencia interpretativa le confiere al demandado la oportunidad de presentar cualquiera de las siguientes defensas: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) que las alegaciones del demandante dejan de exponer una reclamación que justifique la concesión de un remedio; y (6) la falta de una parte indispensable. 32 LPRA Ap. V., R. 10.2; Inmobiliaria Baleares, LLC v. Benabe González, 214 DPR ___ (2024), 2024 TSPR 112.

Al considerar una petición de desestimación al amparo de la referida Regla, se tienen que tomar como ciertos todos los hechos bien alegados en la demanda. Íd., pág. 19. Hecha esta salvedad, el Tribunal interpretará las aseveraciones de la demanda en la forma más favorable para el demandante formulando en su favor todas las inferencias que puedan asistirle. Rivera

Sanfeliz, *et al.* V. Jta. Dir. First Bank, 193 DPR 38, 49 (2015). De igual forma, nuestro más alto foro ha establecido que:

> [A] los fines de disponer de una moción de desestimación, estamos obligados a dar por ciertas y buenas todas las alegaciones fácticas de la demanda presentada. Para prevalecer, el promovente de la moción tiene que demostrar que, aun así, la demanda no expone una reclamación que justifique la concesión de un remedio. Esta doctrina se aplica solamente a los hechos bien alegados y expresados de manera clara y concluyente, que de su faz no den margen a dudas. Pressure Vessels PR v. Empire Gas PR, 137 DPR 497, 505 (1994).

Sobre este asunto, el Dr. José Cuevas Segarra expone que "[e]n la moción de desestima[ción] no se trata de poner en duda los hechos alegados en la demanda, sino atacarla por un vicio intrínseco, por ejemplo: insuficiencia, ausencia de parte indispensable, [o] falta de jurisdicción". J.A. Cuevas Segarra, Tratado de Derecho Procesal Civil, Publicaciones JTS, San Juan, Tomo I, 2000, pág. 275.

En fin, "la demanda no deberá ser desestimada a menos que se desprenda con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo de su reclamación". Pressure Vessels PR. V. Empire Gas P.R., *supra*, pág. 505. Consecuentemente, se debe considerar si a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de éste, la demanda es suficiente para constituir una reclamación válida. El Día, Inc. v. Mun. De Guaynabo, 187 DPR 811, 821 (2013); Consejo Titulares v. Gómez Estremera, 184 DPR 407, 423 (2012).

**B.**

La Ley Núm. 33 de 13 de julio de 1978, según enmendada, mejor conocida como la "Ley Contra el Crimen Organizado y Lavado de Dinero del Estado Libre Asociado de Puerto Rico" (en adelante, "Ley Núm. 33-1978"), fue promulgada con el fin ulterior de disminuir y eludir el crimen organizado en Puerto Rico, el cual "constituye una de las actividades ilegales más sofisticadas, cuyo modo de operación […] socava grandemente nuestra economía mediante el fraude, la corrupción y la fuerza". *Véase*, Exposición de Motivos de la Ley Núm. 33-1978. Así pues, para lograr dicho propósito,

dispone de varios remedios y mecanismos de naturaleza tanto civil como penal.

En detalle, el Artículo 3 de la referida ley dispone lo siguiente:

(a) Será ilegal para cualquier persona que haya recibido ingreso derivado directa o indirectamente de cual patrón de actividad del crimen organizado o de la recaudación de una deuda ilegal, en que dicha persona haya participado como autor, según este término se define en el Artículo 35 del Código Penal de Puerto Rico, utilizar o invertir, directa o indirectamente, todo o parte de dicho ingreso, o el producto del mismo, en la adquisición de algún interés en, o en el establecimiento u operaciones de cualquier empresa o negocio.
(b) **Será ilegal que una persona mediante cualquier patrón de actividad de crimen organizado o mediante la recaudación de una deuda ilegal, adquiera o mantenga, directa o indirectamente, cualquier interés en o control de cualquier empresa**.
 (c) Será ilegal que una persona empleada por o asociada a cualquier empresa o negocio, participe, directa o indirectamente, en la dirección de los asuntos de dicha empresa a través de un patrón de actividad de crimen organizado o mediante la recaudación de una deuda ilegal.
 (d) Será ilegal que una persona se dedique a, participe en, o dirija cualquier patrón de crimen organizado por medio de, o con ayuda de una empresa o negocio. 25 LPRA sec. 971a (énfasis suplido).

En línea con ello, el Artículo 2 de la referida ley dispone que el crimen organizado comprende cualquier violación a los incisos (a), (b), (c), o (d) de su Artículo 3. 25 LPRA sec. 971a. Igualmente, define la actividad de crimen organizado como "cualquier **acto o amenaza** relacionado a asesinato, secuestro, juegos ilegales, leyes relativas a la prostitución, incendio, apropiación ilegal, robo, obscenidad, soborno, **extorsión** o la venta, posesión y transportación de sustancias controladas, o armas, sujeto a acusación criminal bajo las leyes del Estado Libre Asociado o las leyes de los Estados Unidos de América". Íd. Respecto al delito de extorsión, nuestro Código Penal lo define de la siguiente manera:

Toda persona que, mediante **violencia o intimidación**, o bajo pretexto de tener derecho como funcionario o empleado público, **obligue a otra persona a entregar bienes o a realizar, tolerar u omitir actos, los cuales ocurren o se ejecutan con <u>posterioridad</u> a la violencia, intimidación o pretexto de autoridad**, será sancionada con pena de reclusión por un término fijo de tres (3) años, y restitución. Si la persona convicta es una persona jurídica será sancionada con pena de restitución, y multa hasta diez mil dólares ($10,000). 33 LPRA sec. 5256.

Por su parte, la Ley Núm. 33-1978, *supra*, describe el lavado de dinero como cualquier "transacción financiera que envuelva bienes ilegales o cuya

transacción está destinada, en todo o en parte, a obtener beneficio de esa transacción o dejar de informar ingresos provenientes o producto de dicha transacción financiera". Íd. Respecto a las penalidades que conlleva este tipo de delito, dispone que las personas que violen los incisos (a), (b), (c) y (d) del Artículo 3 del estatuto, incurrirán en delito grave y de ser halladas culpables, serán sancionadas con pena de reclusión por un término fijo de 15 años. 25 LPRA sec. 971d.

En lo concerniente a la controversia ante nuestra consideración, el Artículo 9 de la Ley Núm. 33-1978, *supra*, fija los remedios y mecanismos civiles disponibles para combatir las actividades de crimen organizado en Puerto Rico. Específicamente, establece que las personas que sufren daños en sus negocios o propiedades por razón de una violación a las disposiciones del Artículo 3 pueden instar una demanda en el tribunal de justicia y recobrar compensación triple por concepto de los daños sufridos y los gastos incurridos en la demanda, así como una suma razonable por concepto de honorarios de abogado. 25 LPRA sec. 971h. Por último, es menester destacar que las acciones de naturaleza civil para impedir que se viole la mencionada ley pueden instarse independientemente de las acciones penales o demás remedios disponibles en nuestro ordenamiento legal. 25 LPRA sec. 971h.

### C.

Con el propósito de enfrentar la problemática social generada por el crimen organizado, el Congreso de los Estados Unidos aprobó la Ley Púb. Núm. 91 de 15 de octubre de 1970 (84 Stat. 922), mejor conocida como el "Racketeer Influenced and Corrupt Organization Act," 18 USC secs. 1961 *et seq.* (en adelante, "RICO Act"). El objetivo de esta legislación es erradicar este mal, reforzando las herramientas legales relacionadas con la recolección de pruebas, estableciendo nuevas prohibiciones penales e implementando medidas adicionales para contrarrestar las actividades ilícitas de quienes participan en el crimen organizado. Costas Elena y otros v. Magic Sports y otros, 213 DPR 523, 539 (2024).

Sobre ello, es necesario señalar que el texto de la Ley Núm. 33-1978, *supra*, es en esencia, muy parecido al de su equivalente a nivel federal, el RICO Act. Pueblo v. Meliá León, 143 DPR 708, 743 (1997). Esto se debe a

que nuestro estatuto se encuentra inspirado en objetivos similares a los que fundamentaron la legislación federal. Costas Elena y otros v. Magic Sports y otros, *supra*, pág. 539. Por tal razón, nuestro Tribunal Supremo ha expresado que la jurisprudencia interpretativa del texto federal nos sirve como base de referencia para delinear los alcances de nuestra ley, siempre que al hacerlo no se frustren los objetivos establecidos por la Asamblea Legislativa, ni se viole ningún derecho protegido por la Constitución de Puerto Rico. Íd.

En concordancia con lo anterior, el Tribunal Supremo de Estados Unidos estableció que el término prescriptivo para las acciones civiles derivadas del RICO Act es de cuatro (4) años. Esta determinación se basó en la similitud de dicha legislación con la Ley Púb. Núm. 323 de 8 de octubre de 1914, mejor conocida como el "Clayton Act", 15 USC secs 12 *et seq.* En detalle, expresó lo siguiente:

> In sum, we conclude that there is a need for a uniform statute of limitations for civil RICO, that the Clayton Act clearly provides a far closer analogy than any available state statute, and that the federal policies that lie behind RICO and the practicalities of RICO litigation make the selection of the 4–year statute of limitations for Clayton Act actions, 15 U.S.C. § 15b, the most appropriate limitations period for RICO actions. Agency Holding Corp. v. Malley-Duff & Associates, Inc., 483 US 143, 157 (1987).

Dado a que tanto la ley de Puerto Rico como la legislación federal no establecen un término prescriptivo para las acciones civiles relacionadas con el crimen organizado, y considerando que la jurisprudencia interpretativa de la legislación federal nos sirve de marco de referencia, coincidimos con el TPI que el término prescriptivo aplicable las acciones civiles en Puerto Rico es de cuatro (4) años.

**III.**

En el presente caso, las Peticionarias nos solicitaron la revocación de la *Resolución* en la cual se declaró "No Ha Lugar" la *Moción de Desestimación* interpuesta por ellas.

Como primer señalamiento de error, las Peticionarias sostienen que el TPI erró al determinar que la causa de acción incoada en su contra no está prescrita. Por su parte, Hard Contractors sostuvo que la Ley de Crimen Organizado dispone un término de diez (10) años para iniciar la acción penal reconocida en el estatuto y que la relación habida entre las partes era una

contractual, por lo que se debe aplicar el término de prescripción de quince (15) años. Veamos.

De la "**Demanda**" aquí en controversia se desprende que los Recurridos alegaron, entre otras cosas, lo siguiente: (1) las Peticionaras y la Unión de Tronquistas colaboraron de manera conjunta para crear un esquema de actividad de crimen organizado, (2) el 10 de diciembre de 2016, el señor Rodríguez Normandía y el señor Ayala Rosado exigieron a Hard Contractors el diez por ciento (10%) de cada proyecto de mantenimiento, (3) tras el paso del Huracán María, en el año 2017, las Peticionarias y la Unión de Tronquistas cambiaron su estrategia de extorsión, exigiendo a Hard Contractors $8,000.00 semanales o $32,000.00 mensuales y, por último, que (4) el 21 de septiembre de 2022 la Unión de Tronquistas le solicitó a Crowley Caribbean Logistics que eliminara a Hard Contractos del grupo de transportistas afiliados a la Unión.

Tal y como hemos adelantado, la Ley Núm. 33-1978, *supra*, provee múltiples remedios tanto civiles como penales para combatir el crimen organizado. Así pues, tipifica como actividad prohibida el hecho de que una persona adquiera cualquier interés o control de una empresa mediante un patrón de crimen organizado. 25 LPRA sec. 971a. De igual manera define la actividad de crimen organizado como cualquier **acto o amenaza vinculada a diversos delitos, incluido el delito de extorsión**. Íd.

Por su parte, nuestro Código Penal establece que toda persona que **mediante violencia o intimidación** obligue a otra persona a entregar bienes o a realizar, tolerar u omitir actos, los cuales ocurren con posterioridad a la violencia incurren en el delito de extorsión. 33 LPRA sec. 5261. En cuanto al término prescriptivo de las acciones civiles derivadas de la Ley Núm. 33-1978, *supra*, la jurisprudencia interpretativa del RICO Act federal, utilizada como marco de referencia, ha determinado que dicho término es de cuatro (4) años.

Ciertamente, el término prescriptivo que dispone la Ley Núm. 33-1978, *supra*, está relacionado estrictamente a la **acción penal** que allí se reconoce. Nada dispuso el legislador sobre el término de prescripción que aplicaría a la acción civil. De otra parte, no nos convence la alegación del Recurrido de que el término aplicable para la acción civil debe ser el de quince (15) años, pues entre las partes lo que existía era una relación contractual. De un simple

vistazo a las alegaciones consignadas en la "**Demanda**", notamos que la misma está predicada **exclusivamente** en los remedios civiles que provee la Ley Núm. 33-1978, *supra*. Nótese que no existe alegación o causa de acción alguna acumulada sobre incumplimiento de contrato. Por tanto, concluimos que ante el silencio legislativo en cuanto a un término prescriptivo de la acción civil incorporada en la Ley Núm. 33-1978, *supra*, debemos adoptar el plazo acogido por el Tribunal Supremo de los Estados Unidos de cuatro (4) años para este tipo de acción. Fíjese que tanto la ley estatal como el RICO Act persiguen el mismo propósito y fueron adoptados para combatir el mismo tipo de actos que aquejan a nuestra sociedad. Por consiguiente, dicho plazo es aplicable al caso de autos.

Tras un análisis exhaustivo y sosegado del expediente ante nuestra consideración, incluyendo la "**Demanda**", la *Moción de Desestimación* y su correspondiente *Oposición*, hemos arribado a la conclusión de que la causa de acción presentada contra los Recurridos está efectivamente prescrita. Esto se debe a que, aunque Hard Contractors alega que el último hecho relacionado con el patrón de crimen organizado ocurrió en el 21 de septiembre de 2022, éste no puede ser considerado como una actuación que constituyó una actividad prohibida conforme a la ley. Nos explicamos.

La Ley Núm. 33-1978, *supra*, define el crimen organizado como **cualquier acto o amenaza vinculado a ciertos delitos, incluyendo el delito de extorsión**. **Por su parte, el Código Penal establece que la extorsión se configura cuando una persona, mediante violencia o intimidación, obliga a otra a entregar bienes o a realizar actos con posterioridad a la violencia**. Así pues, la solicitud que presuntamente efectuó la Unión de Tronquistas a Crowley Caribbean Logistics para que excluyera a Hard Contractos del grupo de transportistas afiliados a la Unión el 21 de septiembre de 2022, no puede ser considerada como parte del alegado patrón de extorsión, conforme a las definiciones antes mencionadas.

A esos fines, citamos *in extenso* las alegaciones esgrimidas por Hard Contractors en la "**Demanda**", en lo relacionado a los eventos que dieron paso los hechos suscitados el 21 de septiembre de 2022:

[…]

35. En el año 2019, la parte demandante fue informada que se llevaba a cabo una pesquisa por las oficinas de Crowley en la ciudad de Jacksonville sobre el patrón de actividad de crimen organizado. Una alta gerente de Crowley conocía del esquema ilegal.

36. La parte demandante accedió a proveer información sobre lo que conocía y actuó como whistleblower para la demandada Crowley. Esto se llevó a cabo mediante comunicaciones directas y personales con gerentes y particularmente con los abogados de Crowley del bufete JGL Attorney del Edificio Midtown, 420 Avenida Ponce de León, San Juan, PR. En particular el demandante fue entrevistado por los licenciados Jorge F. Blasini González y Raquel M. Dulzaides.

37.El bufete de abogados mencionados en el acápite anterior JGL Attorney llevaron a cabo la investigación sobre las ilegalidades que ocurrían, entrevistaron testigos, obtuvieron documentos de pagos ilegales, y conocían de la actividad ilegal que ocurrió por años Crowley Logistics y otras dependencias que son parte de esta demanda.

38. Como resultado de esta cooperación, Crowley Caribbean Logistics LLC por primera vez tomó acción sobre las denuncias de actividad ilegal de parte de su gerencia y procedió a despedir y no otorgarle los beneficios exigidos por José Ayala Rosado prometidos por Pennella.

39. El 26 de noviembre de 2019, Ayala Rosado presentó demanda contra Crowley Caribbean Logistics por despido injustificado en el Tribunal de Primera Instancia, Sala de Juan, _Ayala Rosado_ v. _Crowley Caribbean Logistics_, SJ2019CV12267.

40. La demanda fue objeto de transacción por las partes sin revelar los términos de la misma. Para la fecha posterior al emplazamiento, el demandante estaba cooperando con los abogados de Crowley Caribbean Logistics en preparación de revelar las ilegalidades que llevaron al despido de Ayala Rosado.

41. **Así las cosas, la demandada Crowley Caribbean y Crowley Puerto Rico Services, esta última encargada del contrato que autoriza a camioneros carrear carga en las carreteras, cesaron de asignarle cargas al demandante**.

42. **En una movida coordinada entre las empresas demandadas, el 21 de septiembre de 2022, la demandada Unión de Tronquistas solicitó formalmente al codemandado Crowley Caribbean Logistics LLC, que eliminara a los demandantes del grupo de transportistas afiliados a la Unión, sacando a la compañía demandante del negocio**.

43. Aunque la demandante no ha corroborado si los demandados se pusieron de acuerdo entre sí para cumplir con los acuerdos en Ayala Rosado y Pannella e incluirlo en el grupo de camioneros, **lo cierto es que sacaron del negocio al que los delató en su actividad ilegal específica de crimen organizado, luego de utilizar su información**.[1]

[...]

---

[1] _Véase_, Apéndice del recurso de _certiorari_, págs. 7-9 (énfasis suplido).

Dando como ciertas las alegaciones que dieron paso el evento ocurrido el 21 de septiembre de 2022 y que se argumenta fue la última actividad dentro del patrón de crimen organizado, concluimos que dicho evento no constituye un acto de violencia o intimidación dirigido a Hard Contractors para que entregara un bien o llevara a cabo cierto de tipo de actuación proscrito por la Ley Núm. 33-1978, *supra*. Nótese que, según alegado por el Recurrido, **la cancelación de su contrato no se debió a una actividad delictiva, según definida por el estatuto, ni formó parte de un plan para ejecutar la extorsión; más bien la cancelación se debió a que Hard Contractors colaboró en la investigación que se llevó a cabo en contra de los directivos de Crowley**. No estamos ante un escenario en el que Hard Contractors alegó que Crowley le hizo un acercamiento en el año 2022, mediante violencia o intimidación, para que le entregara dinero o algún bien o a realizar un acto específico. Simplemente, se trató de la cancelación del contrato, pues alegadamente el Recurrido participó de la investigación efectuada en Jacksonville contra los directivos de Crowley que formaron parte del supuesto esquema criminal. Ello, tomado como cierto y analizado de la forma más favorable para la parte promovente de la acción, no constituye una actividad de crimen organizado, según definido por la Ley Núm. 33-1978, *supra*. Según las alegaciones de la "**Demanda**", el último acto que sí puede ser categorizado como una actividad de crimen organizado lo fue la modificación de su patrón de extorsión para exigirle a Hard Contractors el pago de $8,000.00 semanales en el año 2017.[2]

De hecho, tal y como fue alegado, Hard Contractors ni siquiera formó parte de la alegada conversación en la que Crowley y la Unión se pusieron de acuerdo para cancelar el contrato. Por lo tanto, no se puede sostener que, a través de este acto, se estuviera forzando a Hard Contractors a entregar dinero o a efectuar un acto mediante violencia o intimidación que pudiera considerarse extorsión para propósitos del estatuto. Por el contrario, se trata de un hecho que no constituye un acto de crimen organizado, según definido

---

[2] *Véase*, Apéndice del recurso de *certiorari*, pág. 7.

en la ley. Simplemente, estamos ante la cancelación de la relación existente entre Hard Contractors y Crowley Caribbean Logistics.

Así pues, conforme fuera alegado por los Recurridos en la "**Demanda**", el último acto que podría haber constituido el delito de extorsión y considerarse como una actividad de crimen organizado, alegadamente ocurrió tras el paso del Huracán María, en el año 2017. A la luz de lo anterior, es evidente que han transcurrido más de cuatro (4) años desde ese presunto evento y la presentación de la "**Demanda**", por lo que la causa de acción aquí en controversia se encuentra fatalmente prescrita. En vista de lo anterior, concluimos que el TPI erró al declarar "No Ha Lugar" la *Moción de Desestimación* interpuesta por las Peticionarias.

Habiendo resuelto lo anterior, se hace innecesario la discusión de los restantes señalamientos de error esgrimidos.

**IV.**

Por los fundamentos antes expuestos, los cuales hacemos formar parte integral del presente dictamen, *expedimos* el auto de *certiorari* ante nuestra consideración y *revocamos* la *Resolución* recurrida. En consecuencia, se desestima, con perjuicio, la "**Demanda**" incoada por los Recurridos.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones